**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

LEE HILL,

    Plaintiff,

v.                                                         Civil No. 99-881 JP/WWD

KENNETH S. APFEL, Commissioner,
Social Security Administration,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1. THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision, filed January 24, 2000 **[docket # 10]**.[1] The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff is now 57 years old and alleges a disability which commenced July 1994 when he slipped and fell at work. He complains of back pain which radiates into his left leg, and headaches. He has previously worked as a salesperson and as an investor in real estate and he has a high school education.

    2. The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that Plaintiff could return to past relevant work as a salesperson and thus, is not disabled. The Appeals Council denied review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner.

---

    [1] The motion package was actually filed with the Court on May 1, 2000, although the motion was served on January 24, 2000.

Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id.

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) The Commissioner erred in failing to properly evaluate whether the claimant's impairment met or equaled listing 1.05(C); (2) The ALJ erred in determining Plaintiff's residual functional capacity; (3) The ALJ erred in determining that Plaintiff could return to his past relevant work as a sales representative and in failing to make explicit and necessary findings as to the physical and mental demands of the claimant's past relevant work; and (4) The ALJ erred in failing to make credibility findings as to Plaintiff's wife's testimony.

5. Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. Following his fall at work in July 1994,[2] Plaintiff visited a chiropractor-friend for treatments until January 1995, when he began to see Dr. Jonathan Burg, a specialist in physical medicine. Tr. at 190. From there, he was followed by Dr. Burg, continued to receive chiropractic treatments from his friend, and was seen by Dr. Peter Stern, an orthopedic surgeon,

---

[2] Plaintiff's wife testified that there is a lawsuit pending against Furr's supermarket, where the injury occurred.

and also Dr. Michael Woods, also an orthopedic surgeon, for an independent medical examination.  Plaintiff also underwent physical therapy.  In December 1995, while undergoing therapy, Plaintiff fell off a treadmill, which caused an exacerbation in his back pain, although a bone scan ruled out recent fracture.  Tr. at 159, 172.

7.  At the hearing, he told the ALJ that he had looked for work after his injury, but was hurting too much to work.  Tr. at 31.  He describes the pain as constant and located in the neck and lower back, spreading to his legs with a tingling sensation, with a considerable "loss of feeling" around his knees.  Tr. at 33-34.  At the time of the hearing, he was taking aspirin for the pain, but no prescription drugs, although he has had medications such as Flexeril, Darvocet and Skelaxin prescribed.  Tr. at 138, 159, 162.  He claimed that prescribed massage therapy twice weekly helped the pain for several days.  Tr. at 46.

8.  Plaintiff stated that he has no hobbies and that he does not use the treadmill as much as he used to.  Tr. at 38, 40.  Since the injury, he has gone from 210 pounds to 250 pounds.  Tr. at 32.  He told the ALJ that he sometimes uses a cane on days when the pain is worse.   Mr. Hill stated that he can drive locally, although he has trouble getting in and out of the car, but that his wife drives if they go out of town.  Tr. at 36.  He helps his wife dry dishes and with the shopping.  Tr. at 39.  He spends his days watching a "lot of television" and lying down in bed.  Id.  Plaintiff is able to care for himself but complains that his hands and arms are tired by the time he is finished.  Tr. at 41.[3]

9.  Mr. Hill also complained of "real bad eyes" so that he finds it difficult to sit down and

---

[3] As early as January 1995, before he was well into conservative treatment, Plaintiff reported that he did not have any limitation "in regard to his activities of daily living."  Tr. at 141.

read a book or newspaper.  Tr. at 34   He describes his sleep as "very poor."  Tr. at 43.  He stated that he can stand or sit for ten to fifteen minutes at a time, and can walk on a treadmill for only three to five minutes.  Tr. at 43-44.  Plaintiff did not know whether he could pick up a gallon of milk with both hands and said that he did not attempt to pick up groceries.  Tr. at 45

10.   Plaintiff was diagnosed by Dr. Peter Stern with probable disc stenosis, Tr. at 170 and an August 1995 MRI showed disc protrusion at L2-3 and L4-5 with foraminal stenosis to the right and evidence of slight degenerative change.  Tr. at 158.  The MRI was repeated the following month, but still showed disc herniations at L2-3 and L3-4.  Tr. at 180-81.

**First Alleged Error**

11.   Plaintiff alleges the Commissioner erred in failing to properly evaluate whether the claimant's impairment met or equaled listing 1.05(C) for vertebrogenic disorders.  Defendant notes that the basis for the alleged error is Dr. Burg's April 17, 1998 report which indicates evidence of radiculopathy and limited range of motion.

12.   I agree with Defendant that this report is not within the relevant insured period, regardless of whether the information in the report is sufficient as a basis to conclude that Plaintiff's impairment meets or equals the impairment listing.  Listing 1.05(C) requires a two-part finding of "[p]ain, muscle spasm, and significant limitation of motion in the spine; and [a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss" which has persisted for at least 3 months and is expected to last 12 months.

13.   A treating physician may provide a retrospective diagnosis of a claimant's condition. Potter v. Sec'y of Health & Hum Serv., 905 F.2d 1346, 1348 (10th Cir. 1990).   However, the relevant analysis is whether the claimant was actually disabled prior to the expiration of his

insured status.[4] Id. at 1349. While Dr. Burg's clinical findings indicate that Plaintiff's condition may have deteriorated in the two years since he had seen him, Tr. at 208, previous reports do not show that Plaintiff's impairment was serious enough to meet or equal listing 1.05(C).

14.   Instead, based on progress notes from January 1995 until the end of 1996, Dr. Dr. Burg was optimistic that conservative treatment and work restrictions limiting Mr. Hill to sitting no more than one hour at a time and driving no more than 4 hours during the day would continue to help Plaintiff improve. Tr. at 176-196. In May 1995, Plaintiff felt that he was "home-free as far as symptoms are concerned" with another 12 massage and chiropractic treatments. Tr. at 184. In September, Mr. Hill reported that chiropractic treatment and massage "significantly reduc[ed] his discomfort in his neck and back. . .," and Dr. Burg noted at that time that Plaintiff "moves about much more smoothly." Tr. at 181. In June 1995, Dr. Burg stated that Plaintiff was "doing very well as far as his neck and mid-back pain are concerned," Tr. at 183. In December 1995, Plaintiff's symptoms were "improving greatly." Tr. at 177.

15.   An EMG done in September 1995 showed no active radiculopathy in the left leg. Tr. at 180. Dr. Burg was against surgery recommended by Dr. Stern because he felt that conservative treatment such as weight loss and aerobic conditioning would help and also because of the multilevel aspect of the degenerative changes in the spine. Tr. at 176, 177, 208.[5]

16.   Plaintiff was examined by Dr. Woods in January 1996 after he had fallen off the

---

[4] Plaintiff's last insured date was in December 1995. Tr. at 103.

[5] In a July 28, 1995 note, Dr. Burg felt that Plaintiff warranted "surgical consideration since we have basically treated him for five months now without significant reduction in his leg radiculopathy." Tr. at 182. Prior and subsequent notes, however, indicate that Dr. Burg did not think Plaintiff was a good surgical candidate for the surgery.

treadmill the month before. Tr. at 159. Dr. Woods noted severe limitation of motion of both hips, and low-grade spinal stenosis with mild nerve compression, no sign of nerve root cutoff and no evidence of radiculopathy. Tr. at 160. As Defendant points out, an impairment must meet not only the diagnostic criteria of a listed impairment, but also each of the related symptoms. Dr. Woods' findings, as well as the findings in Dr. Burg's progress notes which reflect Plaintiff's continued complaints of pain, e.g., in the legs, and radicular complaints, are not evidence which meet the listing criteria. Therefore, the ALJ's step two findings were not in error. See Tr. at 182, 183.

**Second and Third Alleged Errors**

17. Plaintiff's next two alleged errors relate to a general step four inquiry, which encompasses both a determination made regarding Plaintiff's residual functional capacity and whether these abilities fit into the particular requirements of past relevant work. As the alleged second error, Plaintiff contends that the ALJ erred in determining Plaintiff's residual functional capacity. As the third error, he alleges that the ALJ erred in determining that Plaintiff could return to his past relevant work as a sales representative and in failing to make explicit and necessary findings as to the physical and mental demands of the claimant's past relevant work.

18. At step four, the ALJ engages in a comparative assessment of the claimant's residual functional capacity and the demands of the work the claimant has done in the past to determine whether the claimant can do his past relevant work. Hinkle v. Apfel, 132 F.3d 1349 (10th Cir. 1997); see 20 C.F.R. § 1520(e); SSR 96-8p. The inquiry has three phases: In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC); in the second, he must determine the physical and mental demands of the claimant's past relevant work;

in the final phase, the ALJ determines whether the claimant has the ability "to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 82-62.

19. Defendant notes, as does the Court, that Plaintiff's brief with regard to all the alleged errors is totally devoid of any argument tailored to the facts of this case. Plaintiff's "argument" consists solely of case holdings and social security rulings strung together without any reference to facts which describe, or at least identify, the ALJ's errors as they relate to the record in this specific case. Not knowing which phase Plaintiff is challenging, or what evidence from the record he relies on, I will look at the sufficiency in general of the ALJ's step four analysis.

20. The ALJ concluded that Plaintiff had the ability to do light work, recognizing an erosion of the vocational base due to driving limitations and a limit on sitting for no more than one hour at a time.[6] At the hearing, the ALJ asked the vocational expert (VE) about Plaintiff's directly transferable skills from his past relevant work, which would enable Plaintiff to engage in other kinds of work. Tr. at 22, 54-55. The ALJ also questioned the VE about whether Plaintiff would be able to perform his past relevant work as a sales representative given physical limitations of sitting for no more than one hour at a time and driving no more than four hours in a day. Tr. at 56.

21. The fact that Plaintiff could not perform his job exactly as before is not critical, since in looking at past relevant work, the test is whether a claimant has the residual functional capacity

---

[6] Dr. Burg's opinion that Plaintiff was precluded from returning to his past work as a salesman was based on these limitations. Tr. at 175. There is no evidence regarding Plaintiff's other impairments (such as vision) which would have any effect on the ALJ's findings. See Resp. at 21 n.5.

to perform the functional demands of a particular past relevant job *or* the functional demands of the occupation as generally required throughout the national economy. Winfrey, 92 F.3d at 1020. In giving his opinion, the VE considered the differences in territories covered, noting that in a larger metropolitan area, a sales representative would not be required to "spend prolonged periods of time in a car." Tr. at 56.

22. I find that the ALJ's conclusion regarding the first phase to be based on substantial evidence from the record. In determining that Mr. Hill was able to perform light work, the ALJ relied on medical opinion evidence as well as Plaintiff's reports to treating physicians. I refer to Dr. Burg's treatment and progress notes as discussed above; findings from medical tests such as EMG and MRI; and Dr. Stern's consult report. In February 1996, a state agency physician conducted a residual functional capacity assessment. Tr. at 117-24. These findings are consistent with the other objective medical evidence in the record.

23. I also find that the ALJ made an adequate inquiry under the second phase of step four. At the hearing, he asked for the VE's opinion about the requirements of Plaintiff's past work. The VE in turn questioned the Plaintiff in order to obtain information that would be relevant to that part of the step four analysis. Tr. at 51-53; Winfrey, 92 F.3d at 1020 (a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work); SSR 82-62.

24. The ALJ considered the VE's opinion together with Plaintiff's abilities to perform work, Tr. at 21-22, thus satisfactorily completing the step four inquiry. Accordingly, I find no error in the ALJ's determination of Plaintiff's residual functional capacity nor in the determination that Plaintiff can return to past relevant work.

**Fourth Alleged Error**

25.    Plaintiff also contends that the ALJ erred in failing to make credibility findings as to Plaintiff's wife's testimony.  While the ALJ is entitled to determine the credibility of lay witnesses as part of "other evidence," see 20 C.F.R. § 404.1527(c)(2), the fact that the ALJ here did not make findings regarding the wife's testimony does not warrant remand of this case.

26.    Plaintiff's wife testified at the hearing that Plaintiff has trouble lifting things and that he "screams when he's turned over in bed. . . and he tries to get up."  Tr. at 50.  As Defendant points out, the wife added nothing to the evidence in the record pertaining to Plaintiff's impairments before December 31, 1995, which marked the end of the relevant period.

27.    Plaintiff takes issue with Defendant's statement that "Plaintiff apparently concedes that the ALJ's findings regarding Plaintiff's own credibility were proper. . . ."  Reply at 7.  Contrary to Plaintiff's representation of Defendant's statement, it was not a point that Defendant *argued*, but rather one that was simply *posited* since, here again, Plaintiff's brief makes no mention of any alleged error by the ALJ regarding Plaintiff's own credibility.  Since Plaintiff explains that he chose "not to brief that issue," this Court can only assume that Plaintiff felt it had little merit, and I would agree with the Plaintiff on that point.

28.    The ALJ's findings as to Plaintiff's own credibility were specific and based on substantial evidence and the correct legal standard.   The ALJ acknowledged the existence of a symptom-producing medical problem, but was not persuaded that Mr. Hill's pain was as "severe and unremitting as alleged."  Tr. at 19.  He noted that Plaintiff took only aspirin to treat the pain because prescribed medication "made him sick," even though there is no reference for such effects of medication in any of the medical notes.

29.  The ALJ further noted that Plaintiff did not return for further care following his fall from the treadmill after 1996, and also noted an inconsistency between Plaintiff's subjective complaints at the hearing and his reported complaints throughout the record to his treating physicians.  See Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) (determination that plaintiff was not credible because his testimony conflicted with the medical records is a recognized basis for discounting that testimony).

30.  Finally, the ALJ noted that both Dr. Woods and Dr. Stern felt that Plaintiff magnifies his symptoms.  Tr. at 19.  Given the above findings, there is no merit to Plaintiff's last allegation of error.

31.  In sum, I find that (1) The Commissioner did not err in failing to properly evaluate whether the claimant's impairment met or equaled listing 1.05(C); (2) The ALJ did not err in determining Plaintiff's residual functional capacity; (3) The ALJ did not err in determining that Plaintiff could return to his past relevant work as a sales representative and did not fail to make explicit and necessary findings as to the physical and mental demands of the claimant's past relevant work; and (4) The ALJ did not err in the credibility inquiry.

## Recommendation

I recommend that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision **[docket # 10]** be denied and this cause of action dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE